THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* CRUZ AROCHO MEDINA, Defendant and Appellant.

No. CR-64-188.        Decided February 9, 1966.

*Adonis Nieves Rodríguez,* counsel appointed by the Supreme Court on appeal to give legal aid to defendant. *J. B. Fernández Badillo, Solicitor General,* and *Manuel Tirado Viera, Assistant Solicitor General,* for The People.

PER CURIAM: Appellant, Cruz Arocho Medina, was accused and convicted of murder in the first degree and sentenced to serve life imprisonment. On appeal he assigns that the trial court (1) erred and abused its discretion in finding that a child was a competent witness, and (2) erred in finding appellant guilty of murder in the first degree and sentencing him to life imprisonment "without having before it sufficient evidence." These assignments of error lack merit for the following reasons:

(1) The testimony of Juan Antonio Vélez, a boy eight years old, is challenged because he was not mentally capable to testify.

■ In *People* v. *Párquez,* 34 P.R.R. 538 (1925), and *People* v. *Rivera,* 12 P.R.R. 386, 395 (1907), we said that pursuant to § 39 of the Law of Evidence (32 L.P.R.A. § 1733(2)) children under 10 years of age, who appear incapable of receiving just impressions of the facts respecting which they are examined, or of relating them truly, cannot be witnesses and in virtue thereof we specifically stated in *People* v. *Rivera, supra,* "it would appear to be logical that, before administering the oath and taking their testimony, the court should make some investigation into the capacity of the witness, because otherwise both proceedings might be ineffectual and without result to the serious injury or damage to the defendant because of the prejudice which may be created in the minds of the jurors by the testimony of a witness who does not understand the sanctity of an oath and the obligation imposed upon him thereby to tell the truth, or who does not fully understand the facts, or who is incapable of stating the same truly and clearly to the court . . . ." In *Párquez, supra,* we said that the decision of this question "is left to the sound judgment of the trial judge" and that "his decision will not be modified on appeal unless it is clearly erroneous." It was also sustained in this case to permit a minor to testify as to the pertinent facts of a case after she testified, upon being questioned by the prosecuting attorney and the judge, that she was eight years old, that she could not read or write, that she did not know the meaning of truth nor what happens to a person who does not speak the truth nor to one who does not lie; that it is right to tell the truth and wrong to lie; that she did not know what an oath was or what it means to testify under oath; "that she had come here today to state what was done to her; that she was going to tell the truth with

reference to this matter; that if something happened to her she would relate it, stating what was done to her, and that this was to tell the truth; that her mother had not punished her for telling the truth; that she had never told her mother a lie; that with reference to the people who lie, her mother taught her not to lie; that she did not know what happened to people who lie, but that she came here to state what happened to her."

In the case at bar the procedure for qualifying the said boy as witness was followed faithfully. Upon being examined by the prosecuting attorney he told his name, age, ward where he lives, the school grade he is in; that he lives with his father, that his teacher is Mr. Arroyo; that he goes to school in the morning until 11:30; that he eats lunch at the school lunchroom; that God punishes the children who lie and his father does too; that the question that gave rise to such answers had not been asked him before; that he has lied sometimes, but upon being asked whether he would tell the truth or lie when testifying, he answered "The truth." At the close of the cross-examination of the boy for qualifying him as witness, the trial judge determined that the boy "Can specify and distinguish places: his home, his school, that is to say, wards. He knows who his father is; or at least, that he lives with his father; who his teacher is. He can fix the time . . . . And moreover that this lad is extraordinarily honest in admitting that sometimes he lies but that today he is determined to tell the truth. We believe that the witness qualifies . . . ." The boy's answers showed that he had sufficient intelligence and discernment; that he understood the difference between telling the truth and lying; that if he lied he would be punished by God and by his father, and that he was aware of the facts and could relate them with sufficient clearness and accuracy. An examination of the testimony given reveals, moreover, that the minor testified in a clear, lucid, and competent manner. It

does not appear from the record, therefore, that the trial court committed error in determining that the child in question was competent as a witness.[1]

(2) The sufficiency of the evidence is attacked. The case was heard by the court without a jury. The evidence consisted of the testimony of several witnesses which we summarize as follows:

1—Dr. Muñiz Núñez testified that he examined the body of Gerarda Feliciano Rosa, in the District Hospital of Aguadilla, on June 27, 1962 (the day after her death); that it presented lacerations in her hands, arms, and knees, wounds and fracture on the head; that the proximate cause of her death was asphyxia due to hanging; that the fracture was produced with a contusive weapon.

2—The aforementioned minor, Juan Antonio Vélez, testified that he lived with his grandmother, Gerarda Feliciano, and "because she was killed," he does not live any more with her; that the day he saw her dead, "tied" (pointing to the neck) with a "piece of hammock," the witness had gone to fetch water from the spring and some beans for a soup; that appellant is his cousin; that they left together from Confesor Montalvo's house to the grandmother's house; they stopped on a hill; appellant told him that grandmother had $4,000; that appellant told him that he would go with him (the witness) to have a good time; that they arrived at grandmother's house; that the witness started to peel a pineapple and appellant lay down on the floor; that the grandmother lay down in the hammock; that he went to a store to buy some groceries at appellant's request; that he heard two screams coming from his grandmother's house which he attributed to her toothache; that on his way back he passed by Montalvo's house and returned with the latter

---

[1] See: VI Wigmore, Evidence, § 1821 (3d ed.); 1 Wharton, Criminal Evidence, § 7 (12th ed. 1955); cf. *Competency of young child as witness in a civil case*, 81 A.L.R.2d 386.

to the victim's house; that upon finding grandmother dead, Montalvo and the witness went to police headquarters in Isabela to testify; that the grandmother used to receive a check for $10.50 and kept the money in the slip she was wearing, he had never seen much money in the house.

3—Confesor Montalvo corroborated the minor's testimony and added that when they arrived at the victim's house they found the front door locked; the witness stayed there and the minor went to the back door from where he came out shouting "look where she is"; that the witness went there and saw the grandmother hanging from a beam of the house, half-seated at the door "with her feet resting on a small stove, then, with a piece of dirty twine hanging from a beam of the house; there she was with swollen lips and a black eye"; that he told the minor that they would go to report what had happened and for that purpose they went to police headquarters in Isabela.

4—Carmen Medina Feliciano, appellant's mother and the victim's daughter, testified that at about seven o'clock on the night of the events she saw appellant at her house when she already knew that the witness' mother had hanged herself; that her husband, Faustino Arocho, informed that fact to appellant.

5—Antonio Arocho Quiñones testified that appellant came to the former's house at about 11:10 on the night of the events and stayed there; that his house is far from the house of appellant's parents.

6—Jesús Avilés Barreto, a detective, testified that he went to the house of the former witness to execute a warrant of arrest on appellant; that on approaching the house he saw appellant standing at a window of said house and when the witness and detective Cabán who accompanied him alighted from the jeep appellant "started running behind the house into a sugarcane plantation and we followed him and ran after him about a kilometer and we could not catch him."

Two days later policeman Rosado brought appellant to police headquarters in Aguadilla; from there he was taken to the scene of the crime; when they arrived there appellant did not want to enter and when coming back "he fled again" . . . to the woods"; he was pursued; two shots were fired at him but he continued running and disappeared. He saw appellant again three or four days later when the police brought him again from Isabela to Aguadilla.

7—Justice of the peace, Rodríguez Rivera, testified that on the day of the events he went with the prosecuting attorney to the scene of the crime and saw the victim hanging from a part of the house, at about eleven o'clock; they investigated the events and returned to Isabela where he examined the minor Juan Antonio Vélez and then ordered appellant's arrest, which order he delivered to the police of Isabela.

It is adduced that this evidence was insufficient to convict, since the mere presence of appellant at the scene of the crime is not sufficient to support his conviction; that in this case there is only a possibility, not a probability that appellant was at the scene of the crime when the crime was committed; that the mere fact of appellant's flight is also insufficient to create a presumption of guilt; that such flights are indicative of his mental confusion; that the circumstantial evidence adduced in this case is not conclusive.

■ We agree with the Solicitor General that the evidence summarized to which the trial judge gave credit, incriminates appellant sufficiently to support his conviction. Said evidence established that appellant believed that his grandmother kept a lot of money, and his intention of having a good time; that when the minor left the victim's house appellant remained therein; that the former heard his grandmother screaming twice while he was going away from the house. Then appellant fled twice after he had been arrested; the second time after he was taken to the victim's house and

had refused to enter. See: *People* v. *Vega Santos*, 88 P.R.R. 264 (1963); 1 Wharton, Criminal Evidence, § 205 (12th ed., 1955). On the basis of this evidence we conclude that the trial court was justified in determining that appellant's guilt had been established beyond a reasonable doubt. *People* v. *Romero and Navarro*, judgment of September 16, 1965; *People* v. *Ramos*, per curiam decision of March 10, 1964; *People* v. *Ruiz*, 85 P.R.R. 463 (1962); *People* v. *Bonilla*, 83 P.R.R. 286 (1961); *People* v. *Bonilla*, 78 P.R.R. 144 (1955).

In view of the foregoing, the judgment rendered in this case by the Superior Court, Aguadilla Part, on October 31, 1962, will be affirmed.

Mr. Justice Hernández Matos did not participate.